NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0628n.06

No. 11-2201

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jul 03, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ARNETTE RODGERS, CARMEN KNIGHT, TAMIE RICE, KATRINA TATE-ANDERSON, JAUNICE FLOWERS, CHERYL SHARPLEY, ANTHONY COOPER, SARAH JENKINS, WENDELL FINLEY, ARECIA STEVENS, CRYSTAL ALLEN-CRUCE, YOLANDA JOHNSON, KEITH CARTER, DORNITA CLEVELAND, ALVITA MOSS, LAURA HILL, and YVONNE MALVAUX, | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs-Appellees, | ) ) |
| v. | ) ) |
| 36TH DISTRICT COURT and MARYLIN E. ATKINS, | ) ) ) |
| Defendants-Appellants. | ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Marylin E. Atkins, chief judge of Michigan's 36th Judicial District Court ("the 36th District"), appeals the district court's denial of her motion for summary judgment on the basis of qualified immunity. The plaintiffs, who are former employees of the 36th District, sued the 36th District and Atkins pursuant to 42 U.S.C. § 1983, alleging that they were terminated without due process of law in violation of the Fifth and Fourteenth Amendments. They argue that under the collective bargaining agreement ("CBA") in

1

effect at the time of their terminations, they could be discharged only for "just cause" and that, as just-cause employees, they had the right to post-termination evidentiary hearings before a neutral decisionmaker, which they did not receive because the 36th District denied their demands for arbitration. Atkins asserts that she is entitled to qualified immunity because it was not clear whether the CBA was in effect at the time the plaintiffs were terminated and, therefore, whether they were just-cause employees with due process rights. The district court denied Atkins's motion for summary judgment on the basis of qualified immunity as to claims brought against Atkins in her individual capacity, except with regard to three plaintiffs, as to whom the motion was granted. For the reasons that follow, we affirm the district court's order denying Atkins qualified immunity as to the other plaintiffs' claims.

I.

The plaintiffs are former employees of the 36th District who were also members of a collective bargaining unit represented by the American Federation of State, County, and Municipal Employees Council 25 and its affiliated Local 3308 ("AFSCME").

AFSCME entered into a CBA with the 36th District on behalf of court employees. Article 12 of the CBA provided that employees could be disciplined "only for just cause." Article 8 described a five-step procedure by which employees could present grievances to the 36th District. Pursuant to Steps 1 through 3, employees could submit grievances, both orally and in writing, and meet with representatives from the 36th District to discuss their complaints. At Step 4, employees could submit their grievances to the Court Administrator or a designated representative, who would conduct a meeting of the relevant parties. In cases involving suspension or discharge, either party

could request the other party to produce evidence, including witnesses, at the meeting or "as soon thereafter as practicable." If a grievance remained unresolved after Step 4, Step 5 permitted a party to demand arbitration.

The initial term of the CBA was July 1, 2001 to June 30, 2006. Article 50 addressed the CBA's termination:

> This Agreement shall remain in full force and effect until June 30, 2006.
>
> This Agreement shall continue in effect for consecutive yearly periods after June 30, 2006, unless notice is given, in writing, by either of the Union or the Employer, to the other party at least ninety (90) days prior to June 30, 2006, or any anniversary date thereafter, of its desire to modify, amend or terminate this Agreement.
>
> If such notice is given, this Agreement shall be open to modification, amendment or termination, as such notice may indicate on June 30, 2006, or the subsequent anniversary date, as the case may be.

On March 1, 2006, James Meadows, the 36th District's interim director of human resources, wrote a letter to Beverly Harris, the president of AFSCME, notifying her "of the Court's intent to modify, amend, or terminate all or parts of the [CBA]." The 36th District and AFSCME later disputed whether Meadows's letter was sufficient to terminate the CBA or whether the CBA remained in effect after June 30, 2006. The parties submitted this issue to an arbitrator and litigated the issue in Michigan courts. On February 28, 2012, the Michigan Court of Appeals ruled that Meadows's letter did not terminate the CBA. *36th Dist. Court v. AFSCME Local 917*, 815 N.W.2d 494, 507 (Mich. Ct. App. 2012), *rev'd in part on other grounds, appeal denied in part*, 821 N.W.2d 786 (Mich. 2012). The parties now agree that the CBA did not terminate until June 2009.

3

Between February 2007 and February 2009, the 36th District terminated the plaintiffs for engaging in a variety of alleged misconduct. The plaintiffs submitted grievances to the 36th District, and the federal district court found that in all but four cases, the plaintiffs' grievances were processed through Step 4. The plaintiffs demanded arbitration, but the 36th District refused to arbitrate. In its communications to the plaintiffs denying arbitration, the 36th District indicated that "[i]t is the Court's position that the March 1, 2006 letter to Local 3308 constituted an effective notice to terminate the Labor Agreement" and that "the Court has no obligation to proceed to arbitration on a termination case, where the termination occurred after the June 30, 2006 termination of the Labor Agreement." The 36th District reiterated this position in its communications with arbitrators requesting that the plaintiffs' grievances not be scheduled for arbitration.

The plaintiffs brought suit in federal district court against the 36th District and Atkins under 42 U.S.C. § 1983, alleging that they were terminated from their positions without due process of law. The parties filed cross-motions for summary judgment. The district court denied the plaintiffs' motion for summary judgment. It granted summary judgment to the 36th District and dismissed claims for damages brought against Atkins in her official capacity on the basis of sovereign immunity. It denied the defendants' motion for summary judgment on the basis of qualified immunity as to claims brought against Atkins in her individual capacity, except with regard to plaintiffs Yolanda Johnson, Yvonne Malvaux, and Donnita Cleveland, as to whom the motion was

granted.[1]   Atkins now appeals the district court's denial of qualified immunity as to the other

plaintiffs' claims.

II.

"The appeal of a denial of qualified immunity is an interlocutory appeal that this Court hears

as a final decision of the district court under 28 U.S.C. § 1291 pursuant to the 'collateral order'

doctrine."  *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006) (citing *Mitchell v.*

*Forsyth*, 472 U.S. 511, 525-27 (1985)).  We review a district court's denial of summary judgment

on the basis of qualified immunity *de novo*.  *Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011)

(citing *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008)).  Summary judgment is proper where no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Fed R. Civ. P. 56(a).  In considering a motion for summary judgment, we construe all reasonable

inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

Qualified immunity protects government officials from liability "when a reasonable official

in the defendant's position would not have understood his or her actions to violate a person's

constitutional rights."  *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007) (citing *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 807 (1982)).  "Under the doctrine of qualified immunity, 'government

officials performing discretionary functions[] generally are shielded from liability for civil damages

---

[1]The district court held that Johnson and Malvaux, who were fired after the CBA terminated in June 2009, did not retain property interests in their employment protected by the Due Process Clause.  It also held that Malvaux and Cleveland failed to pursue arbitration and, as a result, they waived their post-termination due process rights.

insofar as their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known.'" *Id.* (quoting *Harlow*, 457 U.S. at 818).

 In *Saucier v. Katz*, the Supreme Court established a two-step inquiry for determining whether

an official is entitled to qualified immunity. 533 U.S. 194, 201 (2001). A court must consider (1)

whether, viewing the evidence in the light most favorable to the injured party, a constitutional right

has been violated; and (2) whether that right was clearly established. *Id.* In *Pearson v. Callahan*,

the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not

mandatory, and courts have discretion to decide which of the two prongs of the qualified immunity

analysis to address first. 555 U.S. 223, 236 (2009).

 In *Feathers v. Aey*, we established a three-part test for evaluating qualified immunity

defenses:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en*

*banc*) (citations omitted)); *see also Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 n.2 (6th Cir.

2005) (noting that while some panels of this court simply apply *Saucier*'s two -step approach, "the

three-step approach may in some cases increase the clarity of the proper analysis").

 Once a defendant raises the qualified immunity defense, the burden is on the plaintiff to

demonstrate that the official is not entitled to qualified immunity by alleging facts sufficient to show

that the official's act violated clearly established law at the time that it was committed. *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012). "To defeat the qualified immunity bar, a plaintiff 'must present evidence sufficient to create a genuine issue as to whether the defendant committed the acts that violated the law.'" *Id.* (quoting *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994)). "To make out a *genuine* issue of material fact, plaintiff must present significant probative evidence tending to support her version of the facts, *evidence* on which a reasonable jury could return a verdict for her." *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

## A.

First, we consider whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation occurred. *Feathers*, 319 F.3d at 848. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. In order to establish a procedural due process claim, the plaintiffs must show that (1) they had life, liberty, or property interests protected by the Due Process Clause; (2) they were deprived of these protected interests; and (3) the state did not afford them adequate procedural rights. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). The plaintiffs were deprived of any property interests they had in their employment when they were terminated, so we address only the first and third requirements of a procedural due process claim.

i.

We first ask whether the plaintiffs had property interests in their employment protected by the Due Process Clause. *Baird*, 438 F.3d at 611. Property interests are not created by the Constitution. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). In order to have a property interest in a benefit, a person must have more than "an abstract need or desire for it" or "a unilateral expectation of it." *Roth*, 408 U.S. at 577. "He must, instead, have a legitimate claim of entitlement to it." *Id.*

A statute or contract providing that employees may be disciplined or terminated only for "just cause" creates a property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985) (holding that a state statute providing that civil service employees could be dismissed only for "misfeasance, malfeasance, or nonfeasance in office" created a property interest in continued employment); *Singfield*, 389 F.3d at 566 (holding that a CBA providing that "[n]o employee shall be discharged or suspended without just cause" created a property interest in continued employment); *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587 (6th Cir. 2004) (holding that a CBA providing that a teacher may be suspended only for "just cause" created a property interest in continued pay and benefits); *Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000) (holding that a CBA prohibiting teachers from being transferred within a school district except on a showing of

8

"good cause" and "extenuating circumstances" created a property interest in continued employment in a particular position). Therefore, the CBA created a property interest in the plaintiffs' continued employment.

Atkins argues that the district court failed to recognize that the plaintiffs' property interests were contingent upon the CBA's "just cause" provision. Her argument is without merit. The district court explicitly stated that the CBA was the source of the plaintiffs' property interests. It held that the plaintiffs who were terminated prior to June 30, 2009—while the CBA was still in effect—possessed property interests in their continued employment, but the plaintiffs who were fired after the CBA terminated did not. Therefore, the district court did not err.

ii.

Next, we ask whether Atkins provided the plaintiffs with adequate procedural protections. *Baird*, 438 F.3d at 611. "Although the existence of a property interest is defined by state law, the procedures that must be followed in depriving an individual of that property interest are defined by the federal Constitution." *Silberstein v. City of Dayton*, 440 F.3d 306, 315 (6th Cir. 2006) (citing *Loudermill*, 470 U.S. at 541).

The "'root requirement' of the Due Process Clause" is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). "This principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* (quotations marks and citations omitted). This hearing, although required, "need not be elaborate." *Id.* at 545. A public employee with a constitutionally

protected interest in his employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546; *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990). A public employee is not entitled to a neutral decisionmaker at a pre-termination hearing. *Duchesne v. Williams* 849 F.2d 1004, 1005 (6th Cir. 1988) (*en banc*). This is because the purpose of a pre-termination hearing "is not to 'definitively resolve the propriety of the discharge,' as would be the case at the later formal hearing." *Id.* at 1007 (quoting *Loudermill*, 470 U.S. at 545).

"[T]he required extent of post-termination procedures is inextricably intertwined with the scope of pre-termination procedures." *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985) (*per curiam*) (citing *Loudermill*, 470 U.S. at 547-48). If a public employee receives only "an abbreviated pre-termination hearing, due process requires that a discharged employee's post-termination hearing be substantially more 'meaningful.'" *Id.* "At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him." *Id.* In cases where an employee receives an abbreviated pre-termination hearing, "the opportunity for a post-deprivation hearing before a neutral decisionmaker . . . is required for due process." *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) (emphasis removed). "Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination

'right of reply' hearing, then the employee has received all the process due under the Constitution."[2]

*Id.*

Atkins argues that the district court incorrectly concluded that the plaintiffs did not receive pre-termination hearings. The district court made contradictory statements on this point. It acknowledged that "the Plaintiffs were provided with fairly substantial pre-termination procedures, including (1) pre-termination meetings, (2) meetings where the termination decision was made, and (3) in all but four cases, the submission of the Plaintiffs' grievances through Step 4 of the CBA." The district court also stated, however, that "the Plaintiffs did not receive any due process before being terminated." Such inconsistency is troubling, but Atkins's argument ultimately is irrelevant. The plaintiffs do not challenge the pre-termination process that they received. They argue that they did not receive hearings before a neutral decisionmaker because Atkins denied their post-termination demands for arbitration. This is enough to establish a constitutional violation under *Farhat*.

Atkins also argues that the plaintiffs are required to exhaust available administrative and state court remedies, such as Michigan Employment Relation Commission or Wayne Circuit Court remedies, before they can demonstrate that they were deprived of their property rights without due process. In *Mitchell*, this court considered when a plaintiff is required to show that available state

---

[2]In *Mitchell v. Fankhauser*, which was decided a few months after *Farhat*, we held that an employee who received an abbreviated pre-termination hearing and no post-termination hearing was denied due process. 375 F.3d 477, 481 (6th Cir. 2004). We suggested in *dicta* that two hearings are not always required to satisfy due process, acknowledging that "[i]f the pre-termination hearing is more 'meaningful,' as described in *Carter*, then no post-termination hearing would be necessary." *Id.* We need not address the possibility that a single, comprehensive pre-termination hearing before a neutral decisionmaker could satisfy due process, as it is undisputed that the plaintiffs did not receive such a hearing prior to their terminations.

procedures are inadequate to compensate him for a deprivation of property in order to state a claim under § 1983. 375 F.3d at 481. After an extensive survey of this court's sometimes contradictory precedent, we concluded that a plaintiff need not demonstrate the inadequacy of state processes in order to bring an action under § 1983 "where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized conduct." *Id.* at 482 (quoting *Watts v. Burkhart*, 854 F.2d 839, 843 (6th Cir. 1988) (quoting *Hudson v. Palmer*, 468 U.S. 512, 532 (1984))); *see also Silberstein*, 440 F.3d at 315 (finding that the rule requiring a § 1983 plaintiff to demonstrate the inadequacy of a state's post-deprivation corrective proceedings, established in *Parratt v. Taylor*, 451 U.S. 527 (1981), applies "only where the deprivation complained of is random and unpredictable, such that the state cannot feasibly provide a predeprivation hearing").

Atkins characterizes the plaintiffs' claims as challenges to the 36th District's unauthorized refusals to arbitrate their grievances. However, the plaintiffs were not terminated randomly or without authorization, but in conformity with the 36th District's established procedure. At the time of the plaintiffs' terminations, the 36th District consistently denied the plaintiffs' demands for arbitration, purportedly because the 36th District's representatives believed that they had no duty to arbitrate in light of their belief that the CBA had terminated. Because the plaintiffs challenge actions taken pursuant to established state procedure, they are not required to plead and prove the inadequacy of administrative and state court remedies in order to state a claim under § 1983.

In sum, the facts, viewed in the light most favorable to the plaintiffs, show that all three elements of a procedural due process claim are met and that a constitutional violation occurred.

B.

Second, we consider whether the constitutional violation involved a clearly established right of which a reasonable person would have known. *Feathers*, 319 F.3d at 848. In order for a constitutional right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citation omitted); *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002). "When conducting an inquiry to determine whether a constitutional right is clearly established, the law of our circuit requires us to look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to the decisions of other circuits." *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012) (quoting *Feathers*, 319 F.3d at 848).

Supreme Court and Sixth Circuit precedent clearly establishes that public employees who may be fired only for "just cause" have property interests in their continued employment protected by due process. *See, e.g.*, *Loudermill*, 470 U.S. at 538-39; *Singfield*, 389 F. 3d at 566; *Jefferson*, 360 F.3d at 587. *Farhat*, which was decided years prior to the plaintiffs' terminations, establishes that the opportunity for a post-termination evidentiary hearing before a neutral decisionmaker is required

for due process. 370 F.3d at 596. Therefore, the violation here involved a clearly established constitutional right of which a reasonable person in Atkins's position would have known.

C.

Finally, we consider whether Atkins's actions were objectively unreasonable in light of the plaintiffs' clearly established constitutional rights. *Feathers*, 319 F.3d at 848. Atkins argues that the district court erred by failing to consider the circumstances at the time that she acted in determining whether her actions were objectively unreasonable.

The objective legal reasonableness standard requires courts to "analyze[] claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene." *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011) (citing *Anderson*, 483 U.S. at 640-41); *Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) ("Whether qualified immunity applies turns on the 'objective legal reasonableness' of the official's action, viewed on a fact-specific, case-by-case basis."). The district court properly concluded that Atkins's subjective beliefs are irrelevant to the question of whether she acted reasonably. *See, e.g.*, *Caudill v. Hollan*, 431 F.3d 900, 912 (6th Cir. 2005) ("[Q]ualified immunity is an objective rather than a subjective inquiry."). The district court erred, however, by failing to consider whether a reasonable official in Atkins's position would have understood that she was violating the plaintiffs' constitutional rights in light of the circumstances at the time. We now consider whether Atkins's actions were objectively unreasonable under the circumstances in which she acted.

14

Atkins argues that at the time that the plaintiffs were terminated, it was unclear (1) whether the CBA remained in effect, and (2) how the CBA's termination would have affected the plaintiffs' status as just-cause employees under Michigan law. Atkins argues that the 36th District's refusal to provide the plaintiffs with post-termination hearings before a neutral decisionmaker was not objectively unreasonable, since it was not obvious that the plaintiffs were just-cause employees who were entitled to this additional measure of process.[3] We need not address how the CBA's termination would have affected the plaintiffs' status as just-cause employees under Michigan law because the plaintiffs allege facts sufficient to show that a reasonable official in Atkins's position would not have thought that the CBA was properly terminated. The facts, viewed in the light most favorable to the plaintiffs, demonstrate that a reasonable official would have known that the CBA was still in effect during the time period in which the plaintiffs were terminated, that the plaintiffs were just-cause employees under the CBA, and that it was improper to deny their demands for arbitration.

Atkins points to evidence that she argues shows that it was objectively reasonable for her to believe that Meadows's March 2006 letter to Harris terminated the CBA. First, an August 10, 2006, letter from Harris to Meadows regarding the 36th District's cancellation of scheduled contract negotiations acknowledged that "AFSCME Local 3308's contract expired on June 30, 2006,"

---

[3]Atkins also argues that under Michigan law an agreement to arbitrate grievances only survives the expiration of a CBA, when the dispute concerns the kinds of rights that vest during the term of the contract, and that the right not to be discharged except for just cause does not vest, citing *County of Ottawa v. Jaklinski*, 377 N.W.2d 668 (Mich. 1985). Atkins contends that she reasonably believed that the CBA terminated, and, therefore, that the plaintiffs had no contractual right to arbitration at the time their demands were denied. Whether the plaintiffs had a contractual right to arbitration under the CBA is a separate question from whether they were just-cause employees with due process rights under the U.S. Constitution. The latter question is the only question that is relevant to the qualified immunity analysis.

suggesting that AFSCME considered the CBA to have terminated and, therefore, that it was reasonable for Atkins to treat the CBA as terminated as well. Second, an April 12, 2008, letter from AFSCME's attorney to a mediator also stated that the parties' agreement "expired on June 30, 2006." Third, on August 24, 2009, the Michigan Court of Appeals ruled that the CBA had expired and that the plaintiffs in that case had not demonstrated that they had a continuing right to arbitration.[4]

The plaintiffs counter that with the exception of the August 24, 2009, Michigan Court of Appeals ruling, which was reversed a month later on a motion for reconsideration, every arbitrator and state court to consider the issue during the relevant time period found that the CBA was not properly terminated and remained in effect. Moreover, the plaintiffs argue that it was obvious that Meadows's letter did not terminate the CBA under the plain terms of the contract. Article 50 required two steps to terminate the CBA: (1) written notice of intent to terminate the agreement, and (2) some further action to terminate the contract:

> This Agreement shall continue in effect for consecutive yearly periods after June 30, 2006, unless notice is given, in writing, by either of the Union or the Employer, to the other party at least ninety (90) days prior to June 30, 2006, or any anniversary date thereafter, of its desire to modify, amend or terminate this Agreement.
>
> If such notice is given, this Agreement shall be open to modification, amendment or termination, as such notice may indicate on June 30, 2006, or the subsequent anniversary date, as the case may be.

---

[4]Under Article 50, the CBA was to continue after its initial term of July 1, 2001 to June 30, 2006 unless it was effectively terminated by either of the parties. Thus, the CBA could not really "expire"— it either terminated or continued. It is unclear what AFSCME representatives and the Michigan Court of Appeals meant when they used the term "expired": that the CBA's initial term had passed or that the CBA was no longer in effect. To the extent that AFSCME representatives and the Michigan courts treated the CBA as terminated, this may be relevant to whether Atkins was objectively unreasonable under the circumstances.

First, the plaintiffs argue that Meadows's March 2006 letter expressed "the Court's intent to modify, amend, or terminate all or parts of the [CBA]" but did not specify which of those three options the 36th District intended to pursue. Second, the plaintiffs contend that even if Meadows's ambiguous letter did express the 36th District's intent to terminate the CBA, the 36th District took no further action to terminate the contract. The Michigan Court of Appeals accepted these arguments when it held recently that Meadows's letter did not terminate the CBA:

> The first paragraph of article 50 must be understood in light of the second paragraph that explicitly states the effect of providing notice. "If such notice is given, this Agreement *shall be open* to . . . ." The second paragraph indicates that the 90-day notice is required to preserve the right to modify, amend, or terminate the agreement on June 30, 2006, or a subsequent anniversary date. The 90-day notice of the "desire to modify, amend or terminate" the agreement is not itself effective as a modification, amendment, or termination of the CBA. Rather, the CBA in this case contemplates some additional action. [The 36th District] does not point to any further action it took to terminate the agreement. An affidavit from [AFSCME's] staff representative states that [the 36th District] "has never communicated in writing that it has terminated the collective bargaining agreement." Therefore, the March 1, 2006, letter did not terminate the CBA because it only referenced an *intent* to modify, amend, or terminate.

> Furthermore, [the 36th District's] contention that the March 1 letter resulted in termination of the CBA ignores the ambiguity of the language in the letter. The letter referenced [the 36th District's] intent to "modify, amend or terminate all or parts of the Labor Agreement . . . ." A notice to terminate must be clear and explicit . . . . A notice of modification is not a notice of termination and does not affect termination of the contract. When a party provides a notice that refers to an intent to both modify and terminate without specifying which one, the ambiguity of the notice destroys its effectiveness for any purpose . . . .

*36th Dist. Court*, 815 N.W.2d at 506-07(quoting the reasoning of a prior panel of the court in a related case, *36th Dist. Court v. AFSCME Local 3308*, No. 291643, 2010 WL 2540940, at *2–3 (Mich. Ct. App. June 24, 2010) (*per curiam*) (quotation marks and citations omitted)).

17

We hold that the plaintiffs allege sufficient facts to lead a jury to conclude that it was objectively unreasonable for an official in Atkins's position to believe that the CBA terminated and, therefore, that it was objectively unreasonable to fire the plaintiffs and deny their demands for arbitration. Because the plaintiffs have presented evidence sufficient to create a genuine issue of material fact on this point, it would be inappropriate to grant summary judgment to Atkins on the basis of qualified immunity.

## III.

Atkins argues that she is entitled to qualified immunity because she merely supervised Meadows, who handled day-to-day human resources matters, including the plaintiffs' terminations and the 36th District's refusals to arbitrate. She argues that the plaintiffs have not shown that Atkins encouraged or condoned constitutional violations, as required for her to be liable under § 1983 on a supervisory liability theory.

The district court found that there is a genuine issue of material fact as to the extent of Atkins's involvement with the decisions to terminate the plaintiffs and to deny their demands for arbitration. This court lacks jurisdiction to consider "a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). The only exception is "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380; *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009) (finding that "where the trial court's determination that a fact is subject to

18

reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory appeal") (quoting *Wysong v. Heath,* 260 F. App'x 848, 853 (6th Cir. 2008)).

The district court's conclusion that the plaintiffs demonstrated a genuine issue of material fact rested, in part, on an e-mail from Atkins to judges and magistrates discussing the plaintiffs' terminations. Atkins argues that the e-mail is hearsay evidence, which cannot be considered at the summary judgment stage, and suggests that the plaintiffs have presented no admissible evidence demonstrating Atkins's involvement with the plaintiffs' terminations. Atkins's argument fails for two reasons. First, Atkins's e-mail is not hearsay, because it is not being offered to prove the truth of the matter asserted therein (that the terminated plaintiffs would not be returning to work). *See* Fed. R. Evid. 801(c) (defining "hearsay" as an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"). The plaintiffs offer the e-mail to demonstrate Atkins's awareness of and involvement with the decisions to terminate the plaintiffs and deny arbitration. Second, the district court's decision also rested on documents from Meadows suggesting that he lacked authority to make decisions on critical issues. Therefore, the district court's determination that there is a reasonable dispute as to Atkins's involvement with the decisions to terminate the plaintiffs is not based solely on hearsay, and its conclusion is not "blatantly and demonstrably false." *Moldowan*, 578 F.3d at 370 (quotation marks and citation omitted). We lack jurisdiction to consider Atkins's argument.

IV.

For these reasons, we affirm the district court's denial of Atkins's motion for summary judgment on the basis of qualified immunity.

Martha Craig Daughtrey, concurring. I write separately only to note that we do not have to reach the question of whether a reasonable official would have known that the CBA was still in effect at the time the plaintiffs were terminated, because even if a reasonable official would *not* have known that the contract was still in effect, Atkins still would not be entitled to qualified immunity. Under clearly established Michigan law, at the expiration of a labor contract employers may not unilaterally alter those "wages, hours, and other terms and conditions of employment" designated to be mandatory subjects of bargaining *unless and until* the parties have reached an impasse in their contract negotiations. *Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 234 (Mich. 1996) (quoting M.C.L. § 423.215(1)). "This prohibition against unilateral action prior to impasse serves to foster labor peace and must be liberally construed." *Local 1467, Int'l Ass'n of Firefighters v. Portage*, 352 N.W.2d 284, 288 (Mich. Ct. App. 1984). Grievance and arbitration procedures are mandatory subjects of bargaining under Michigan law, just as they are under federal law labor law. *County of Ottawa v. Jaklinski*, 377 N.W.2d 668, 673 (Mich. 1985). Hence, a reasonable official in Atkins's position should have known that, even if the contract had expired, the plaintiffs were nonetheless entitled to the grievance procedures mandated by the CBA, at least until an impasse had been reached in the contract negotiations between the union and the 36th District.