**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 17a0408n.06**

**No. 16-2163**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 14, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES (AFSCME), Council 25, and its affiliated locals, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CHARTER COUNTY OF WAYNE; WARREN EVANS, | ) ) ) | OPINION |
| Defendants-Appellees. | ) | |

**BEFORE:** **NORRIS, MOORE, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** American Federation of State, County, & Municipal Employees Council 25 and its affiliated local unions (collectively AFSCME) were parties to a collective bargaining agreement (CBA) with the Charter County of Wayne. AFSCME brought suit against Wayne County and Warren Evans, the County Executive, alleging that its due process rights under the Fourteenth Amendment had been violated by Wayne County's unilateral changes to pension benefit levels and refusal to submit to arbitration. The district court dismissed AFSCME's claims, finding that it failed to assert a protected property interest under the Due Process Clause. For the reasons explained below, we **AFFIRM** the district court's judgment.

## I.    BACKGROUND

### A.    Factual Background

AFSCME and its Local 3317 represent Sergeants, Lieutenants, and Captains in the Wayne County Sheriff's Department. AFSCME was party to a collective bargaining agreement with Wayne County that was set to expire on September 30, 2014.

The events leading to AFSCME's claims began in 2011 when the Michigan state Legislature enacted the Local Government and School District Fiscal Accountability Act (Act 4), which authorized the governor to appoint an emergency manager for certain local governments experiencing financial crises. Act 4 replaced an earlier Michigan law, the Local Government Fiscal Responsibility Act (Act 72), which had been in place since 1990. Act 72 gave the State power to appoint an emergency financial manager to municipalities facing financial insolvency. *Phillips v. Snyder*, 836 F.3d 707, 711 (6th Cir. 2016). Act 4 changed the title of these appointees to "emergency managers," and expanded the scope of their powers. *Id.*

Michigan voters rejected Act 4 by referendum in November 2012, which revived Act 72. *See* Mich. Op. Att'y Gen. No. 7267, 2012 WL 3544658, at *6 (Aug. 6, 2012). Following the voters' rejection of Act 4, the Michigan Legislature enacted the Local Financial Stability and Choice Act (Act 436) in December 2012, effective in March 2013. In Michigan, a public act with an appropriations provision is not subject to referendum. *See In re City of Detroit*, 504 B.R. 191, 252 (Bankr. E.D. Mich. 2013) (citing *Mich. Conservation Clubs v. Sec'y of State*, 464 Mich. 359, 367 (2001)). Unlike Act 4, Act 436 added appropriations provisions, *In re City of Detroit*, 504 B.R. at 251, so it was not subject to a referendum. Like Act 4, Act 436 authorized the Governor to appoint emergency managers with authority to exercise the power of local governments. *See Phillips*, 836 F.3d at 711.

In September 2014, shortly after the enactment of Act 436, AFSCME was in the midst of negotiating a new bargaining agreement with Wayne County. Prior to the CBA's September 30 expiration, AFSCME petitioned the Michigan Employee Relations Commission (MERC), seeking arbitration to help negotiate a successor agreement. Under 1969 Mich. Pub. Act. 312, M.C.L. § 423.231 et seq. (Act 312), AFSCME had the right to seek arbitration through MERC while the CBA was still in effect. According to AFSCME, sometime before September 30, its representatives were approached by Kenneth Wilson, the Director of Labor Relations for Wayne County. Wilson asked AFSCME to withdraw the Act 312 petition so that Evans, the soon-to-be-elected County Executive, could attempt to resolve the dispute over the new CBA once he took office in January 2015. Following written assurances from Wilson that the union would be able to proceed with Act 312 arbitration if a contract was not agreed to after Evans became County Executive, AFSCME extended its existing CBA.

In June 2015, with the June 23 final extension of the CBA looming and the parties unable to come to an agreement, AFSCME petitioned MERC for the appointment of an arbitrator. The Commission appointed Charles Ott. At the pre-hearing arbitration conference, the arbitrator sent the parties back to the bargaining table for a statutory 21-day period. The parties were ultimately unable to come to an agreement, and the arbitrator told them to present their last best offers around August 24.

During this same time, however, Wayne County's financial crisis was coming to a head. On June 17, Evans sent a letter to Michigan State Treasurer Nick Khouri, seeking to invoke powers under Act 436 to address the financial situation in Wayne County. A consent agreement between Wayne County and Khouri, as state treasurer, was approved on August 21, which designated Evans as a "chief administrative officer" as defined by M.C.L. § 141.1542(b). Under

the statute, the consent agreement could grant powers prescribed for emergency managers to the chief administrative officer, except those powers prescribed under section 12(1)(k). *See* M.C.L. § 141.1548(10). Section 12(1)(k) permits emergency managers to "reject, modify, or terminate 1 or more terms and conditions of an existing collective bargaining agreement" under certain circumstances. M.C.L. § 141.1552(1)(k). Pursuant to the consent agreement, the County's obligation to bargain with unions would be suspended thirty days after the agreement's effective date—on September 21, 2015. As chief administrative officer, Evans could then "exercise powers prescribed for emergency managers . . . to impose by order matters relating to wages, hours, and other terms and conditions of employment, whether economic or noneconomic, for County employees previously covered by the expired collective bargaining agreement."

Following approval of the consent agreement and Evans's invocation of his powers under Act 436, Wayne County moved to dismiss the MERC arbitration. On September 16, 2015, MERC voted to dismiss the Act 312 petition, explaining in its order of October 16 that "the Employers . . . are subject to a consent agreement under Act 436 that suspended the County's duty to bargain as of September 20, 2015," and that Wayne County "cannot be required to participate in Act 312 arbitration." AFSCME appealed the decision to the Michigan Court of Appeals, which reviews decisions made by MERC, but later voluntarily withdrew the appeal.

## B.    Procedural History

AFSCME filed suit in federal court on September 16, 2015,[1] seeking a temporary restraining order and/or preliminary injunction against Wayne County and Evans. The district

---

[1] AFSCME also brought a claim for breach of contract Wayne County Circuit Court on September 14, 2015, seeking a temporary restraining order. The Court initially granted the TRO, but was reversed by the Michigan Court of Appeals. In January 2016, the Circuit Court granted AFSCME's motion to stay the proceedings based on its pending appeal of the MERC decision regarding arbitration to the Michigan Court of Appeals. After AFSCME withdrew its appeal of the MERC decision, the Circuit Court set aside the stay, and eventually granted Wayne County's Motion to Dismiss. The Circuit Court determined that the breach of contract claim was barred by res

court denied the TRO on September 18.  On September 21, the County's obligation to bargain with the unions was suspended under the consent agreement, and new employment terms, including changes to the pension system, were imposed on Local 3317.  AFSCME filed an amended complaint, still seeking a preliminary injunction and alleging violations of the First Amendment and Due Process Clause.  The district court evaluated the motion for a preliminary injunction in tandem with the defendants' Rule 12(b)(6) motion to dismiss the amended complaint.  The court denied the preliminary injunction and granted the motion to dismiss.  The court's order, however, dismissed AFSCME's First Amendment and due process claims without prejudice, and the court subsequently granted in part AFSCME's motion to file another amended complaint.

AFSCME filed a Second Amended Complaint (the operative complaint on appeal, herein the Complaint), which was "significantly altered from the proposed version submitted with [its] motion to amend."  The Complaint contained largely generic and conclusory language, even as to its legal claims.  It alleged that AFSCME was (1) deprived of certain property rights without due process, and (2) retaliated against in violation of the First Amendment for filing suit against Wayne County and Evans.  On defendants' motion, the court granted dismissal and denied AFSCME's motion for leave to file a third amended complaint.

The court rejected AFSCME's arguments under the Due Process Clause of the Fourteenth Amendment and, germane to this appeal, determined that: (1) the Complaint failed to allege that any change in disability pension benefits would apply retroactively or that the plaintiffs had a property right in a particular benefit level; (2) a provision in the CBA permitting AFSCME to refrain from submitting disputes over certain retirement-related issues to Act 312 arbitration did

---

judicata, as MERC had already ruled that Wayne County was not required to participate in Act 312 arbitration, and AFSCME had voluntarily withdrawn an appeal of that decision.

not affirmatively state that these retirement provisions would remain in effect past the expiration of the rest of the CBA; and (3) AFSCME failed to allege the deprivation of a protected property interest by arguing that it was denied arbitration of grievances filed prior to the invocation of Act 436. The court also determined that AFSCME failed to allege a prima facie case of First Amendment retaliation.

On appeal, AFSCME raises only two issues: (1) that it has a constitutionally protected property interest in the retirement pension benefit levels provided for in Article 38 of the CBA, which it asserts remain in effect until 2020; and (2) it has a right to submit its labor disputes to arbitration. The defendants respond that Act 436 does not deprive AFSCME of its property rights without due process, and that Michigan law does not create a property right to Act 312 arbitration. They also contend that res judicata and collateral estoppel bars AFSCME's action.

## II. ANALYSIS

### A. Res Judicata and Collateral Estoppel

The defendants argue that AFSCME's current suit should be barred on the grounds of res judicata and collateral estoppel, because it arises out of the same set of facts as the MERC decision which held that Wayne County cannot be required to submit involuntarily to Act 312 arbitration and which AFSCME chose not to appeal. The district court did not address or analyze this issue—indeed, the defendants raised res judicata in only one line of its first motion to dismiss. (R. 16 at PageID 314) ("The MERC decision establishes, and is *res judicata* on, the question of whether, under state law, the County may decline to bargain, participate in Act 312 proceedings, or impose terms and conditions of employment under state law.") Neither res judicata nor collateral estoppel were raised in the defendants' second motion to dismiss, which was filed three months after MERC's written decision was issued. The defendants never

provided a full argument on the issue, AFSCME never responded to the issue, and the district court did not address it in any of its orders dismissing AFSCME's claims.

We have stated that "[t]he purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). Under Federal Rule of Civil Procedure 8(c), a party must raise an affirmative defense such as estoppel or res judicata in a responsive pleading. But we have held that affirmative defenses may also be raised by motion, or even for the first time during the course of summary judgment proceedings. *See id.* (finding that a motion to dismiss raising res judicata properly put the issue before the district court); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (finding that an affirmative defense, though raised for the first time in response to a summary judgment motion, was not waived on appeal because plaintiffs were or should have been aware that the defendant intended to rely on such a defense). In such cases, however, the issue was evaluated and decided by the district court and not raised for the first time during appellate review. The purpose of Rule 8 "is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore*, 992 F.3d at 1445; *see also Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991) ("It has been held that a defendant does not waive an affirmative defense if [h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.") (quotation marks and citation omitted).

The defendants were aware of the MERC decision before the district court addressed both their first and second motions to dismiss and still did not explicitly argue the issues of res judicata or collateral estoppel. Prior to the district court's order granting the second motion to dismiss, moreover, the defendants were aware of AFSCME's voluntary withdrawal of its appeal

of the MERC decision, and of the Wayne County Circuit Court's dismissal of AFSCME's breach of contract claims, which explicitly relied on res judicata. Nonetheless, the defendants still did not raise the issue of res judicata and collateral estoppel until their appellate brief. This is far past the "pragmatically sufficient time" to raise the defense, and prejudices AFSCME's ability to respond to their arguments. *Charpentier*, 937 F.2d at 864. We find that the defendants have waived the affirmative defenses of res judicata and collateral estoppel, and turn to the merits of AFSCME's due process claims.

### B.     Due Process Claims

We review de novo a district court's order granting a Rule 12(b)(6) motion to dismiss. *Ohio Pub. Emp. Ret. Sys. v. Fed Home Loan Mortg. Corp.*, 830 F.3d 376, 382 (6th Cir. 2016). We construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true, and examine whether the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. This standard requires that a plaintiff's complaint "contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (quotation marks and citation omitted).

AFSCME's Complaint alleges that Evans and Wayne County violated its rights under the Due Process Clause of the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. Due process has both procedural and substantive components. *EJS Props., LLC v. City of*

*Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). "Procedural due process is traditionally viewed as the requirement that the government provide a fair procedure when depriving someone of life, liberty, or property; substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Id.* (quotation marks and citations omitted). The district court understood AFSCME's allegations to assert violations of procedural due process, and AFSCME does not dispute this on appeal.

To establish a claim for violation of procedural due process, "a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), the Supreme Court stated that property interests "are not created by the Constitution," but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." "A contract, such as a collective bargaining agreement, may create a property interest." *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000). AFSCME asserts two property interests to serve as the basis of its due process allegations: (1) a guaranteed right to accrue pension benefits at a 2.5% level until 2020, and (2) the right to submit issues to arbitration under Act 312. The district court rejected both of these arguments, finding that as pled in the Complaint and its exhibits, these did not constitute property interests protected by the Due Process Clause.

### 1.    Property Interest in Pension Benefit Levels

AFSCME first argues that it has alleged a protected property right, arising from the CBA with Wayne County, in preserving a 2.5% pension multiplier until 2020.  It states that by changing the pension multiplier from 2.5% to 1.25% on September 21, 2015, Evans improperly exercised the powers of an emergency manager under Section 12(1)(k) of Act 436, which was prohibited by the consent agreement.  AFSCME argues that although the CBA (and Wayne County's duty to bargain) had expired at the time Evans made these changes, Article 38—which contains the pension provisions—did not expire until 2020.  The district court did not specifically address Evans's power to make changes to the pension benefit multiplier.  The court examined the Complaint and exhibits and found that Article 38 of the CBA "does not affirmatively state that the retirement provisions will remain in effect until 2020."  Rather, the provision "states only that [AFSCME had] no obligation to bargain over the provisions (which they did not) and will not submit any retirement disputes to Act 312 arbitration (which they also did not)."  The court found that this provision did not provide an exception or alternative end date to that governing the remainder of the (expired) CBA.

The contract provision referenced in the Complaint, § 38.01(L) of the CBA, reads:

> Upon the termination of this Collective Bargaining Agreement on September 30, 2011, the parties may agree to bargain over retirement related issues during the next round of contract negotiations.  However, all issues concerning retirement, including but not limited to, any and all provisions outlined in Article 38 of this Agreement, covering the period of October 1, 2008 through September 30, 2011, shall not be subject to Act 312 arbitration until October 1, 2020.

As the district court determined, this part of the CBA does not provide for a specific pension benefit multiplier, nor state that the retirement provisions in Article 38 remain in effect until 2020.  The provision relates to how the parties may bargain over retirement-related issues, and

whether such issues will be subject to Act 312 arbitration. Without stating how the provision extends retirement-related portions of the CBA beyond the expiration of the entire agreement, AFSCME merely points to case law establishing that a CBA may include different expiration dates for different provisions of the contract. That is undisputed. But AFSCME'S allegation that this particular CBA provided for a distinct expiration date for the provisions in Article 38 is not supported by the plain language of the agreement. Indeed, AFSCME fails to specify how language pushing off any arbitration until 2020 supports an inference that the benefits multiplier itself must stay in place until 2020. Thus, AFSCME cannot show a protected property interest, arising from a contract with Wayne County, in maintaining certain pension benefit levels.

Similarly, AFSCME's argument that Chief Administrative Officer Evans lacked the power to change the pension benefit multiplier hinges on the expiration of the CBA. Section 12(1)(k) permits emergency managers to reject or modify the terms and conditions of an *existing* collective bargaining agreement under certain circumstances. *See* M.C.L. § 141.1552(1)(k). Under Act 436, a chief administrative officer can be granted all the powers of emergency managers, except those prescribed under Section 12(1)(k). The consent agreement, however, states that once the County's obligation to bargain with unions is suspended, the chief administrative officer is permitted to "exercise powers prescribed for emergency managers . . . to impose by order matters relating to wages, hours, and other terms and conditions of employment, whether economic or noneconomic, for County employees previously covered by the expired collective bargaining agreement." Because the CBA—including Article 38—had expired before Evans changed the pension benefit multiplier, the exhibits to the Complaint reveal that AFSCME cannot prove that Evans acted beyond his power as chief administrative officer of Wayne

County. Thus, we find that AFSCME has failed to allege that it had a protected property interest in the 2.5% benefits multiplier until 2020.

### 2. Property Interest in Act 312 Arbitration

Based on its contract with Wayne County, AFSCME also argues that the Complaint is supported by a protected property interest—the right to submit outstanding disputes with Wayne County to Act 312 arbitration before MERC. The Complaint alleges that Wayne County's refusal to bargain was a due process violation. But on appeal, AFSCME attempts to reframe this allegation as a state law contract claim, asserting that "[u]nder Michigan law, parties can, by contract, agree to submit their outstanding contractual issues to binding arbitration."

The district court, following the allegations in the Complaint, rejected AFSCME's due process claim. The court found that AFSCME had failed to allege a protected property interest, explaining that "the arbitration proceeding is itself the process [AFSCME] argues is due, rather than the property interest to be protected by due process. [AFSCME is] alleging that [it is] being deprived of protected property interests without due process; the process cannot itself *be* the property interest." On appeal, the defendants reiterate this analysis.

As the district court noted, AFSCME appears to offer only the arbitration process itself, provided for in the CBA, as a property interest to support this claim. AFSCME has not pointed to any case law finding that the arbitration process, or a similar grievance resolution process, can itself be a property interest protected by the Due Process Clause. Rather, arbitration is a procedural process that may be due to a plaintiff in order to protect some other property interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("'Property' cannot be defined by the procedures provided for its deprivation."); *Olim v. Wakinekona*, 461 U.S. 238,

250-51 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.").

In *Rodgers v. 36th District Court*, 529 F. App'x 642, 647-49 (6th Cir. 2013), we determined that employees subject to a CBA with a provision stating that they could be disciplined or terminated for "just cause" had a property interest in their continued employment. Further, we found that the denial of post-termination arbitration proceedings, as provided for in the CBA, violated the employees' procedural due process rights. *Id.* But *Rodgers* held that the plaintiffs' property right in their continued employment was rooted in the just cause provision of their CBA, not the arbitration process itself. *See id.* at 647-48 ("A statute or contract providing that employees may be disciplined or terminated only for 'just cause' creates a property interest.") (citing cases). Here, AFSCME is not clear what underlying benefits or rights in the CBA it seeks to arbitrate. The Complaint refers only to AFSCME's April 2015 filing of "a class action grievance as it relates to the funding of the pension system" that Wayne County refused to arbitrate. It does not allege nor has AFSCME indicated what these grievances are, how they relate to the claims in this case, or how they may be constitutionally protected property interests. AFSCME alleges only that it had a right to arbitration; thus, it cannot establish a constitutionally protected property interest. Because AFSCME has not shown that it has a protected property interest, its due process claim fails.

AFSCME's appellate brief, however, seeks to restate this portion of its argument as a "right to submit labor disputes to arbitration in the State of Michigan" that arises from a private contract—a new characterization more akin to a state law breach of contract claim. AFSCME then argues that this right is not prohibited by the Public Employee Labor Relations Act (PERA). AFSCME and Wayne County formed such a contractual agreement allowing for arbitration in

their CBA. The defendants do not dispute that this was permissible under PERA, but argue that Act 436 modified PERA's general bargaining obligations by suspending such obligations when local governments are experiencing financial emergency. While AFSCME correctly states that public employees may contract with local governments to take their grievances to arbitration, they do so pursuant to their bargaining rights provided for by PERA.[2] *See Gibraltar Sch. Dist. v. Gibraltar MESPA-Transp.*, 505 N.W. 2d 214, 223-24 (Mich. 1993) (finding that PERA does not impose arbitration, and "that there is no statutory duty to arbitrate after the expiration of a collective bargaining agreement"). It is PERA that allowed the parties to create the private contract that AFSCME seeks to enforce, but AFSCME's rights under PERA were modified post-expiration of the CBA by Act 436 and the consent agreement. Any previous right that AFSCME may have had to Act 312 arbitration was therefore changed, and this argument does not support AFSCME's due process claim.

## III.    CONCLUSION

For the reasons explained above, we AFFIRM the district court's judgment.

---

[2] AFSCME appears to argue that it should be allowed to submit some grievances to arbitration because they involve rights granted under the agreement that had vested prior to the expiration of the CBA. **(Appellant's Br. at 20)** Under Michigan law, "the right to grievance arbitration survives the expiration of the collective bargaining agreement when the dispute concerns the kinds of rights which could accrue or vest during the term of the contract." *Gibraltar*, 505 N.W.2d at 224 (quoting *Ottawa Co. v. Jaklinski*, 377 N.W.2d 668, 677 (Mich. 1985). But as we have discussed, AFSCME has not alleged which rights under the CBA it seeks to submit to arbitration, or whether they vested prior to the expiration of the agreement.